March 4, 2020

Re:     *Horn v. Safeway Inc., et al.,* Case No. 3:19-cv-02488-JCS

Dear Judge Spero:

Pursuant to the Case Management and Pretrial Order entered August 27, 2019, the parties provide this joint letter regarding defendant Safeway's responses to plaintiff Debra Horn's Requests for Production of Documents, Set One, Interrogatories, Set One, and Requests for Admission, Set One. The parties submit this joint letter after completing extensive meet and confer by phone, email, letter, and in person, with lead trial counsel.

### Plaintiff's Position

RFP No. 5, as narrowed, seeks policies concerning managers, supervisors, persons in charge, and bookkeepers using personal cell phones, smart phones, or email accounts to conduct work in effect from July 21, 2005 to June 28, 2017. Safeway objects on relevance grounds because the apparent purpose is to seek further discovery of communications made with those devices or accounts. Ms. Horn asserts that such a purpose does make the request relevant under proportionality because producing the policy or policies is a low burden. She also asserts that such policies may be relevant as they potentially relate to the use of personal devices to call the police on suspected shoplifters, an act she alleges Safeway accused her of.

RFP No. 9, as narrowed, seeks polices concerning unauthorized disclosure of employee private medical information or medical conditions in effect in October 2016. Ms. Horn asks that Safeway promptly make an amended response reflecting agreement to this narrowed scope.

RFP Nos. 39-54, as narrowed, seek emails, with all attachments and including drafts, that relate to disability accommodation for Ms. Horn, from July 21, 2005 to June 28, 2017, either in Native Format with all metadata or in three part load files: PDF, searchable text, and metadata. Safeway has agreed to, and maintains that it already has produced all responsive attachments and drafts. Ms. Horn asks that Safeway promptly make an amended response reflecting that agreement. Safeway maintains that the metadata and Native Format attachments requested would be so burdensome as to be disproportionate to the needs of the case. Ms. Horn counters that Safeway failed to object to the form of ESI requested pursuant to Rule 34(b)(2)(D), that Rule 34(b)(1)(C) authorizes her to specify the form of ESI, that Native Format with all metadata is an ordinary form of ESI for emails (e.g. *Silicon Labs Integration, Inc. v. Melman* (N.D. 2010) 2010 WL 4588887 *2), and that Safeway cannot simply ignore plaintiff's request for Native Format "and produce it in some other format." *Morgan Hill Concerned Parents Association v. California Department of Education* (E.D. 2017) 2017 WL 445722 *5. In the spirit of compromise, Ms. Horn offers as an alternative to Native Format, a production of image files (PDF) with accompanying searchable text files and metadata. This is a common and appropriate form of email production. *Themis Bar Review, LLC v. Kaplan, Inc*. (S.D. 2015) 2015 WL 3397877 *5-*6.

Interrogatory No. 1, as narrowed, reads: "For each non-management employee of **DEFENDANT** employed at the Safeway Dublin store and managed by **DEFENDANT** who *a Safeway store manager is aware* called the police or called 911 to report a shoplifting incident or suspected shoplifting incident occurring within that store *without specific authorization from Safeway management to do so*, from January 1, 2009 to the present, **IDENTIFY** the employee." Plaintiff's

Hon. Joseph C. Spero
March 4, 2020
page 2

definitions provide that "**IDENTIFY**" means "to provide the full name, address, and telephone number of that individual, his or her race and gender, as well as to identify whether that individual is currently an employee of defendant Safeway Inc., and whether that individual acted as a supervisor at the time of the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding."  Safeway refuses to respond, maintaining the interrogatory is still overbroad, burdensome, irrelevant, and that it improperly contains subparts that each count as separate interrogatories.  Ms. Horn counters that Safeway told her, and her Complaint alleges, that she was terminated for having allegedly called the police regarding a suspected shoplifter without authorization to do so, in violation of a purported company policy.  Ms. Horn asserts that sets the bounds for comparators in the context of discovery.

Interrogatory No. 2 asks Safeway to identify "all **DOCUMENTS** that discuss or describe the incident, including but not limited to any and all reports about the investigation," for each employee identified in response to Interrogatory No. 1.  Plaintiff's definitions provide that **"IDENTIFY"** means "to provide the following information: 1. The type of document; 2. The date the document was prepared; 3. The title of the document; 4. The persons(s) who prepared or who participated in the preparation of the document; 5. The person to whom the document was originally sent, if appropriate; 6. The present location of the document; and 7. The person or persons having possession, custody, or control of the documents and all copies of it."  The parties' positions are fundamentally the same as with Interrogatory No. 1.

Interrogatory No. 3 asks Safeway "If in **YOUR** response to Plaintiff's Request for Admission No. 43 **YOU** do not admit without qualification that **YOUR** employees have a fiduciary duty turn over any and all work-related **DOCUMENTS** to **YOU** on demand, **STATE ALL FACTS** on which you base your response, and **IDENTIFY** all **DOCUMENTS** and other tangible things that support your response."  As described below, Safeway objects to RFA No. 43 as vague and ambiguous and irrelevant.  Safeway refuses to respond to Interrogatory No. 3, objecting that it is vague and ambiguous, overbroad, irrelevant, burdensome and oppressive, and that it exceeds the numerical limit on interrogatories, based on the subparts of Interrogatory No. 1.  Ms. Horn counters that there is no genuine ambiguity now that the parties have thoroughly discussed the meaning of the request, that the interrogatory is relevant because she asserts Safeway employees routinely perform work duties using personal devices and accounts, and that the subparts to Interrogatory No. 1 do not constitute separate interrogatories.

Interrogatory No. 4 asks Safeway "If in **YOUR** response to Plaintiff's Request for Admission No. 44 **YOU** do not admit without qualification that **YOU** did not take steps to preserve all discoverable **DOCUMENTS** and other Electronically Stored Information relevant to the claims or defenses in this lawsuit, **STATE ALL FACTS** on which you base your response, **IDENTIFY** all persons who have knowledge of those facts, and **IDENTIFY** all **DOCUMENTS** and other tangible things that support your response."  Notwithstanding its objections that it is vague, ambiguous, overbroad, and irrelevant, Safeway denied RFA No. 44.  Safeway refuses to respond to Interrogatory No. 4, objecting that it is vague and ambiguous, overbroad, irrelevant, burdensome and oppressive, seeks attorney-client privileged information, seeks attorney work product, seeks information protected by individual privacy, and that it exceeds the numerical limit on interrogatories, based on the subparts of Interrogatory No. 1.  Ms. Horn counters that there is no genuine ambiguity preventing Safeway from responding, that what steps Safeway took to preserve evidence is plainly relevant, that the assertions of privilege are "generalized claims of privilege or work product protection" in violation of Judge Spero's Standing Order, and that the subparts to Interrogatory No. 1 do not constitute separate interrogatories.

Hon. Joseph C. Spero
March 4, 2020
page 3

Interrogatories Nos. 5-8 ask Safeway to state all facts and identify all persons with knowledge of those facts supporting certain contentions made in its Answer. Safeway refuses to respond, objecting that the interrogatories are vague and ambiguous, overbroad, irrelevant, burdensome and oppressive, seek information protected by individual privacy, and that they exceed the numerical limit on interrogatories, based on the subparts of Interrogatory No. 1. Ms. Horn counters that these interrogatories simply ask Safeway to explain its contentions in its Answer, which is "entirely appropriate." *Subramani v. Wells Fargo Bank, N.A.* (N.D. 2014) 2014 WL 7206888 *2.

Request for Admission No. 43 seeks an admission that Safeway's "employees have a fiduciary duty turn over any and all work-related **DOCUMENTS** to **YOU** on demand." The parties have clarified that by "fiduciary duty," the request seeks an admission that Safeway imposes a duty on its employees, that "work-related" means created in the performance of work, and that "on demand" means when demanded, without implication that it be instantaneous. Safeway refuses to respond, objecting that the request is vague and ambiguous, overbroad, and irrelevant. Ms. Horn counters that it is relevant because she asserts Safeway employees routinely perform work duties using personal devices and accounts and that proportionality weighs in favor of requiring a response because the burden in responding is low.

Finally, Ms. Horn asks the Court to rule on her Requests for Production Nos. 58 and 59. They seek documents substantially similar to the information sought by Interrogatories 1 and 2.

### Safeway's Position

In response to Plaintiff's numerous document requests seeking a wide-range of documents dating back to 2005, Safeway has conducted an extensive search and has, to date, produced over 1,800 pages of documents. These documents include emails relating to Plaintiff's alleged disabilities, multiple store policies, Plaintiff's personnel file and disciplinary records, documents relating to the numerous customer complaints made against Plaintiff as well as two separate incidents in which Plaintiff called the police on customers of color who she falsely accused of shoplifting, and documents relating to the termination of Plaintiff's employment. (Following a union arbitration, the arbitrator found that Plaintiff had "engaged in serious misconduct by indulging in racial profiling and falsely accusing customers of theft" and "left her assigned work for a period of time" in violation of company policies, but reduced Plaintiff's termination to a one-year unpaid suspension.) Despite Safeway's extensive document production, Plaintiff, a current employee, persists in seeking additional documents and information disproportionate to the needs of the case. (Fed R. Civ. P. 26(b)(1).)

RFP No. 5: This request seeks Safeway policies concerning the use of personal devices by certain Safeway employees for work-related activities. Plaintiff's request, however, is unrelated to any issue in this case. First, Plaintiff asserts that such policies "potentially relate" to employee use of personal devices to call the police on suspected shoplifters, but she fails to explain the significance of this "potential relation." While Plaintiff was disciplined by Safeway, in part, for calling the police without authorization on customers who she falsely accused of shoplifting, whether she used a store phone or personal phone has never been an issue in this case. Second, Plaintiff vaguely asserts that she needs such policies in order to conduct further discovery but fails to explain why her prior discovery requests are insufficient for this purpose.

RFP No. 9: This request seeks Safeway policies concerning improper disclosure of private medical information. Plaintiff, however, does not assert such a claim. Nonetheless, Plaintiff asserts

Hon. Joseph C. Spero
March 4, 2020
page 4

the requested policies are relevant to her allegation that her work restrictions were discussed by employees on the sales floor. Even if true, discussing work duties Plaintiff cannot do does not constitute a disclosure of private medical information, and even if it did, Safeway's policies would have no bearing on whether a violation of law occurred.

RFP Nos. 39-54: These requests seek all emails relating to disability accommodation for Plaintiff from multiple individuals for a 12-year time period, as well as all metadata relating to these emails. Safeway objected to the requests as overbroad and burdensome and oppressive, in part based on the requests for production of emails in native format, and stated in its responses that it was instead producing responsive emails in searchable PDF format. Production of the metadata for all emails previously produced to Plaintiff in searchable PDF format would be very expensive and time-consuming and Plaintiff does not explain why she contends such an effort is necessary here. Moreover, production of emails in native format would make it very difficult to track the use of such documents given the absence of Bates-stamp numbering. However, in an effort to address Plaintiff's concerns, Safeway suggested that if Plaintiff would identify specific emails about which she has concerns, the parties could continue to meet and confer about them. Plaintiff declined this offer and continues to simply assert that she wants *all* metadata.

Furthermore, the cases cited by Plaintiff to support her position are inapposite and do not support that production of metadata is required here. First, in *Silicon Labs Integration, Inc. v. Melman* (N.D. Cal. 2010) 2010 WL 4588887 *2, there was a specific concern that the emails that had previously been produced had been modified from the originals. That is not a concern here. Second, in *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.* (E.D. Cal. 2017) 2017 WL 445722, *3, the responding party never objected to the request for production in native format and never specified an alternative production format. Here, Safeway objected to Plaintiff's request as overbroad and burdensome and oppressive and specified in its responses that it was producing the emails in searchable PDF. Third, in *Themis Bar Review, LLC v. Kaplan, Inc.* (S.D. Cal. May 26, 2015) 2015 WL 3397877, *4, the Court found that the producing party had failed to comply with a Joint Discovery Plan, which had been agreed to by the parties, and which established a procedure for requesting production in native format. That is not an issue here. Again, Safeway requests that Plaintiff identify specific emails about which she has concern so that the parties can attempt to resolve the issue.

Interrogatory Nos. 1 and 2: Plaintiff's original Interrogatory No. 1 sought the identity of each non-management employee working in District 7 of Safeway's Northern California Division who called the police on suspected shoplifters for an 11-year period of time as well as the date of the calls, all reasons an investigation was or was not conducted, the outcome of any such investigations and various information about the caller including his or her contact information, race, gender and status as a supervisor. Safeway objected, in part, on the grounds that the request is overbroad, burdensome and oppressive, and contains multiple subparts that exceeded the permissible number of interrogatories. During that 11-year period of time, there were well over 25 instances in which the police were contacted regarding suspected shoplifters, and each of these incidents involved a unique set of facts. Accordingly, this interrogatory alone exceeded the numerical limit of 25 interrogatories as each incident counts as its own interrogatory. (*See Collaboration Properties, Inc. v. Polycom, Inc.* (N.D. Cal. 2004) 224 F.R.D. 473, 475; *Safeco of America v. Rawstron* (C.D. Cal. 1998) 181 F.R.D. 441, 445.) Plaintiff now proposes limiting this interrogatory to the identities (including race and gender, which is not relevant to the case) of each non-management employee working at Plaintiff's store who a store manager is aware of who called the police without authorization. However, the interrogatory, even as narrowed, remains overbroad and burdensome. As a

Hon. Joseph C. Spero
March 4, 2020
page 5

preliminary matter, this information is not readily available, for example, in a database. The information would have to be gathered manually by interviewing members of management (to the extent they remain employed) and relying on their memories of events potentially years ago. Thus, there is no way to obtain a reliable list of employees. In addition, Plaintiff's interrogatory does not seek proper comparator information. Plaintiff's employment was not terminated based solely on the call she made to the police immediately prior to her termination. First, Plaintiff had previously called the police to report a suspected shoplifter without authorization and she had been specifically warned not to do so again. Second, Plaintiff's misconduct resulted in two separate customer complaints including at least one in which it was asserted the call was motivated by racial profiling. Third, Plaintiff was wrong about the customers' conduct in both instances. Fourth, at the time of the second incident, Plaintiff was on two active written warnings for providing poor customer service. Fifth, Plaintiff violated Safeway's policies regarding providing excellent customer service. Sixth, Plaintiff left her workstation unattended for an extended period of time in violation of company policy. Accordingly, the proper comparators would be employees who committed the same violations as Plaintiff.

Interrogatory No. 2, which seeks extensive information about documents related to Interrogatory No. 1, is similarly overbroad, burdensome and oppressive.

Interrogatory No. 3 is tied to RFA No. 43, discussed below.

Interrogatory No. 4 asks Safeway to state all facts supporting its denial of RFA No. 44 that Safeway admit that it did not take steps to preserve all documents relevant to the case, and to identify all persons with knowledge of those facts. This request is overbroad, burdensome and oppressive, disproportionate to the needs of the case and seeks privileged information. Such "discovery on discovery" should be permitted only where there is a legitimate concern that responsive information has not been preserved. (*Vieste, LLC v. Hill Redwood Dev.* (N.D. Cal. June 6, 2011) 2011 WL 2198257, at *1.) No such concerns have been raised here.

Interrogatory Nos. 5-8 ask Safeway to "state all facts" supporting certain of its affirmative defenses and to identify all persons who have knowledge of those facts. As a preliminary matter, Plaintiff has already exceeded the permissible number of interrogatories, as discussed above. (*Walker v. Lakewood Condo. Owners Ass'n* (C.D. Cal. 1999) 186 F.R.D. 584, 586–87 (a party cannot withdraw an interrogatory that has already been objected to in order to reduce its total number of interrogatories).) Furthermore, Plaintiff's requests are overbroad and burdensome and oppressive. For example, Interrogatory No. 5 asks Safeway to state all facts supporting its contention that Safeway was unaware of the conduct of which Plaintiff complains. Safeway, however, is at a loss as to how it could possibly identify all facts supporting its lack of knowledge. (*Shorter v. Baca* (C.D. Cal. Oct. 31, 2013) 2013 WL 12131270, *10.) To the extent Safeway is required to provide responses, Safeway suggests that it be required to do so only after Plaintiff's deposition is taken, most likely in or around the end of March 2020. (*In re Convergent Technologies* (N.D.Cal.1985) 108 F.R.D. 328, 338-340 (postponing responses to contention interrogatories until further discovery has taken place is often advisable).)

RFA No. 43: This request asks Safeway to admit that its employees have a fiduciary duty to turn over any and all work-related documents to Safeway on demand. Safeway submits that this request is overbroad and vague and ambiguous and does not relate to any issue in this case. Interrogatory No. 3, which seeks all facts supporting Safeway's response to this RFA, is objectionable for the same reasons.

RPD Nos. 58 and 59: The parties have never met and conferred regarding these requests.

Hon. Joseph C. Spero
March 4, 2020
page 6

Very truly yours,

| | |
|---|---|
| SIEGEL, YEE, BRUNNER & MEHTA | LAFAYETTE & KUMAGAI LLP |
| */s/ Micah Clatterbaugh* | */s/ Brian H. Chun* |
| Micah Clatterbaugh | Brian H. Chun |