February 8, 2021

Re:  *Horn v. Safeway Inc., et al.,* Case No. 3:19-cv-02488-JCS

Dear Judge Spero:

Defendant Safeway Inc. ("Safeway") and Plaintiff Debra Horn ("Plaintiff") provide this joint letter regarding a dispute between the parties as to the amount of time that should be allocated for the completion of Plaintiff's deposition. Safeway seeks an additional three hours on the record. Plaintiff will agree to only one additional hour on the record.

## SAFEWAY'S EFFORTS TO MEET AND CONFER

Counsel for the parties met and conferred extensively by phone but reached an impasse. Accordingly, on January 14, 2021, per Judge Spero's Civil Standing Order, Safeway's counsel requested a video meet and confer call involving lead trial counsel for the parties and requested available dates/times. Despite several follow up requests by phone and email by Safeway's counsel, Plaintiff's counsel waited until January 28, 2021 at 2:00 p.m. to respond (14 days later), and indicated their availability for a video meet and confer call only three hours later, i.e., at 5:00 p.m. Lead trial counsel for Safeway, Gary T. Lafayette, and his co-counsel, Brian H. Chun, nevertheless appeared for the video meet and confer call scheduled at short notice. At the outset of the call, and in violation of Judge Spero's Standing Order, Chan Kim, Plaintiff's counsel stated that Dan Siegel, lead trial counsel for Plaintiff, would not be participating.

## SAFEWAY'S POSITION

Safeway commenced the deposition of Plaintiff on August 21, 2020 via Zoom video but was forced to place the deposition on hold after 2 hours and 21 minutes due to problems with Plaintiff's internet connection. Her video kept freezing and her audio kept cutting out. The deposition resumed on August 27, 2020, but Plaintiff's counsel unilaterally ended the deposition after falsely claiming that Safeway had exceeded the 7-hour deposition time limit.

The total time on the record is currently 6 hours, 22 minutes and 13 seconds. However, this figure does not reflect the multitude of difficulties, delays and impediments suffered during the deposition. For example, the time on the record <u>includes</u> (1) delays due to Plaintiff's poor internet connection and discussions on the record regarding this issue, (2) Plaintiff's delay in responding to straightforward questions, (3) Plaintiff repeatedly giving evasive and non-responsive answers (discussed below), (4) Plaintiff's counsel's speaking objections, and (5) videographer delays. In addition, having to stop and re-start the deposition interrupted the flow of the deposition and made it less efficient that it otherwise would have been.

These delays, when combined with the remaining 38 minutes, warrant an additional three hours on the record. Indeed, a deposition may be extended by the Court beyond the limitation of 7 hours "if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." (Fed. R. Civ. P 30(d)(1).) Here, Safeway should be permitted three additional hours on the record due to the deposition delays as well as the breadth of Plaintiff's allegations. Plaintiff's Complaint alleges 14 different causes of action and spans a <u>14-year period of time</u> (2005-2019). Plaintiff identified <u>98 witnesses</u> in discovery.

### Deposition Delays by Plaintiff

Plaintiff's responses were frequently evasive and non-responsive. Such tactics required

follow-up questioning and bogged down the deposition causing substantial delays.  Given the space limitations of this joint letter, Safeway can only describe a few examples below, but can provide several additional examples if requested by the Court.

Plaintiff's employment was terminated after two separate incidents in which she racially profiled customers of color, called the police on them and falsely accused them of shoplifting.  In describing the first of these two incidents in which she called the police on an African American woman and her daughter, Plaintiff testified evasively as follows:

    Q.    Well, did you in any way communicate to the dispatcher anything that could be used to identify the two people who you thought were shoplifting?
    A.    The dispatcher asked for a description, yes.
    Q.    Okay.  So what did you say?
    A.    I gave the description of the two.
    Q.    I don't know what that means.  What did you say to them?
    A.    When the dispatcher asked what they're wearing, how tall are they, what Caucasian are they.
    Q.    What type of Caucasian were they?
    A.    I... January 16.  African-American.
    Q.    So, you did say that they were African-American, right?
    A.    I was asked to give a description of the suspects.  Yes, I did.  That's a question that was asked of me.
    Q.    Okay.  So you identified their race, right?
    A.    I was asked --
MR. KIM:  Asked and answered.
MR. LAFAYETTE:  I'm not asking if someone asked you anything.  I'm simply asking you if you identified them by race, yes or no?
THE WITNESS:  I identified them by two possible shoplifters.
BY MR. LAFAYETTE:  Q.   Did you identify them by race?
    A.    I -- I...
    Q.    Ma'am, I don't know why it's so difficult.  Okay.  Really.  Did you identify them by race?
    A.    Per the police dispatcher asking me their nationality, yes, I did.
    Q.    Okay.  Is nationality the same as race?
    A.    I guess so.
    Q.    Well, I thought my nationality was a citizen of the United States of America.  That's my national -- that's my nationality.
    A.    Okay.
    Q.    So did you identify them by race?
    A.    Yes.
    Q.    Thank you.  And you said it was two African-American women, right?
    A.    I believe so if I recall.  (Pl. Depo. at 137:8-139:5.)

In describing the second racial profiling incident, it took Plaintiff over five minutes to provide a response to the question of what she saw the customers of color do that was wrong and prompted her to call the police.  Due to space limitations, the following is just a short excerpt of Plaintiff's testimony in response to this question:

    Q.    Well, the only thing I'm asking you is: What had they done that was wrong?
    A.    And can you go back to the question that said all they were doing was going up and

down the aisles? Did you ask that that was wrong?
Q. I'm asking my question. What had they done that was wrong?
A. Nothing -- anything that's suspicious --
Q. I'm not asking --
A. -- we're told to call the police on. So I don't know what -- as far as right and wrong.
Q. I'm not asking about suspicion, ma'am. I'm asking: What did you see these people do that was wrong?
A. It -- I -- I can't be the determination of right or wrong until the final. I'm not – I can't answer that. I am not sure how to answer that. (Pl. Depo. at 63:5-64:11.)

Again, these are only a handful of the examples of Plaintiff's evasive responses. Additional examples include Plaintiff taking over 8 minutes to identify what medical restrictions she could recall having in 2012, (Pl. Depo. 187:16-194:3) and taking over 4 minutes to state whether she believed it was good customer service to walk away from and not respond to a customer who asked a question. (Pl. Depo. 254:23-259:2.)

Per Judge Spero's Civil Standing Order requiring each side to propose a final compromise, Safeway stated it was willing to agree to less than three hours on the record. Plaintiff's counsel, however, responded that he is unwilling to compromise and maintained that he would only agree to one additional hour. Given the issues discussed above, Safeway requests that it be permitted an additional three hours on the record.

## PLAINTIFF'S POSITION

Defense counsel deposed Mrs. Debra Horn on August 21, 2020 and August 27, 2020. Mrs. Horn agrees with Safeway that the total time on the record is approximately 6 hours and 22 minutes. Plaintiff's counsel has agreed to produce Mrs. Horn for an hour on February 11, 2021. The Court should deny Safeway's request to depose Mrs. Horn for an additional three hours because the interruptions due to technical difficulties were resolved quickly; Mrs. Horn did not frequently evade defense counsel's questioning; and because defense counsel's request for additional time prejudices Mrs. Horn due to its delay. Indeed, this issue arose on August 27, 2020 yet defense counsel is just now, 4 days prior to the non-expert discovery cutoff, seeking the Court's intervention in this dispute.

Mrs. Horn's deposition on August 21, 2020 was interrupted due to her bad internet connection. The technical delays were insignificant and the parties went off the record each time an issue arose to preserve the time on record. The time on record amount to approximately 2 hours and 18 minutes before the parties agreed to continue the deposition for a week later.

On August 27, 2020, Mrs. Horn's deposition resumed. A dispute arose after approximately 5 hours had elapsed from the start time wherein plaintiff's counsel incorrectly believed that the length of the deposition exceeded 7 hours. Defense counsel disagreed with plaintiff's position. To resolve the dispute, plaintiff's counsel suggested the parties go off the record to calculate the remaining time left. Defense counsel refused. As a result, plaintiff's counsel ended the deposition with 38 minutes of time on the record remaining.

Since August 27, 2020, the parties have informally met and conferred to resolve this

issue. Plaintiff's counsel agreed that defense counsel was entitled to 38 minutes to bring them to 7 hours but was willing to produce Mrs. Horn for up to an hour. Plaintiff's counsel believes this is reasonable. The additional 22 minutes accommodates for any and all delays due to technical difficulties, which were not many. Plaintiff's counsel disagrees with the assertion that Mrs. Horn was evasive during questioning. Nor can defense counsel's cherry picking of the transcript be accepted to support Safeway's generalized characterization of her as such.

Moreover, Judge Spero's civil standing order requires the parties to provide a detailed joint letter to the Court within five business days of the lead trial counsels' meet and confer session. The session occurred on January 28, 2021 at 5 p.m. Defense counsel, however, waited until February 5, 2021 at 6:37 p.m. to send Safeway's portion of the joint letter to plaintiff's counsel. Non-expert discovery is set to close this Friday, February 12, 2021. Notwithstanding, the parties were aware of this issue since August 27, 2020 and defense counsel did nothing until January 2021. This delay is prejudicial to Mrs. Horn.

Plaintiff's counsel believes defense counsel's request for three hours is due to the fact that defense counsel spent the majority of both depositions questioning Mrs. Horn on issues unrelated to the issues presented in her complaint, as demonstrated above. Safeway's failure to use its time wisely is not a valid reason for granting an additional three hours of time on the record.

Accordingly, Mrs. Horn respectfully request that the Court deny defendant's request.

DATED: February 8, 2021            LAFAYETTE & KUMAGAI LLP

                                   /s/  Brian H. Chun
                                   BRIAN H. CHUN
                                   Attorneys for Defendant
                                   SAFEWAY INC.

DATED: February 8, 2021            SIEGEL, YEE, BRUNNER & MEHTA

                                   /s/  Andrew Chan Kim
                                   ANDREW CHAN KIM
                                   Attorneys for Plaintiff
                                   DEBRA HORN

### SIGNATURE ATTESTATION

I hereby attest that I have obtained the concurrence of Andrew Chan Kim, counsel for Plaintiff, for the filing of this Joint Letter Brief.

                                   /s/ Brian H. Chun
                                   BRIAN H. CHUN