UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBRA HORN,

               Plaintiff,

    v.

SAFEWAY INC.,

               Defendant.

Case No. 19-cv-02488-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 60

## I.  INTRODUCTION

Plaintiff Debra Horn brought this disability discrimination action against her employer, Defendant Safeway Inc. ("Safeway"), in Alameda County Superior Court. She asserts claims for, *inter alia*, discrimination, harassment and retaliation based on disability, as well as failure to provide reasonable accommodation for her disability, under the American's with Disabilities Act ("ADA") and California's Fair Employment and Housing Act ("FEHA"). Safeway removed the case to this Court and now brings a Motion for Partial Summary Judgment ("Motion"). A hearing on the Motion was held on April 30, 2021. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.  BACKGROUND

### A.  Factual and Procedural Background[2]

Safeway hired Horn in 2003. Declaration of Andrew Chan Kim in Opposition to Motion for Summary Judgment ("Kim Decl.") ¶ 2 & Ex. A (Deposition of Debra Horn ("Horn Depo.")) at

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] The facts set forth below are undisputed unless otherwise noted.

15-17.  From 2003 to 2017, she stocked product shelves, worked as a cashier, assisted with self-checkout, and performed general customer service.  *Id.* at 16, 19, 223-224, 389-390.

In 2005, Horn suffered a work injury to her foot.  *Id.* at 18.  She required three surgeries on her foot between 2005 and 2007.  *Id.* at 271-272;  Declaration of Debra Horn in Opposition to Motion for Summary Judgment ("Horn Decl.") ¶ 2.   On July 8, 2010, Horn began to experience persistent pain in her hands associated with work.   Horn Decl. ¶ 3.  She required "multiple surgeries" to her hands, which she underwent in 2012.  *Id.*  On November 24, 2016, Horn slipped and fell on melted ice at work, injuring her knees.  *Id.* ¶ 4.

According to Horn, between September 2005 and December 2016, she provided numerous doctors' notes informing Safeway of her need for various accommodations, including her need for a stool to sit on and a limitation of no more than two hours at a time, four hours total, with at least a 15 minute break in between, working as a checker. *See* Chun Decl., Ex. E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 3-57.[3]  Horn alleges these limitations were not followed, however, and that she was harassed and retaliated against by her managers and coworkers in connection with her requests for accommodation.  *Id.*

It is undisputed that on May 18, 2012, Horn's doctor reported that she needed the following accommodation:  "She will continue doing her normal job.  She is best if she checks no more than 2 hours at a time, 4 hours total per day."  Chun Decl., Ex. B (Horn Depo.) & Depo. Ex. 68 (Notice of Offer of Modified or Alternative Work).  This recommendation was quoted in a Notice of Offer of Modified or Alternative Work ("Modified Work Offer") prepared by Safeway, along with the further statement, "We understand that you further requested a stool to be in the checkstand. A stool will be available to be utilized on an as-needed basis."  *Id.*   The Modified Work Offer was signed by a Safeway representative on August 15, 2012 and by Horn on September 6, 2012.  *Id.*  According to Horn, however, these restrictions continued to be ignored and managers continued to harass and retaliate against her and to refuse to provide reasonable

---

[3] Safeway objects to some of the statements in Plaintiff's Opposition brief regarding work restrictions she contends were recommended by her doctors on the basis that they are hearsay and lack foundation. *See* Reply at 14-15.  The Court need not rule on these objections as they have no impact on the conclusions it reaches in deciding the instant motion.

1    accommodations of her disability.  Chun Decl., Ex. E (Plaintiff's Responses to Defendant's

2    Interrogatories, Set One) at 11-19.

3        It appears to be undisputed that the store director at the Safeway where Horn worked was

4    Brian Sullivan from 2009 through 2014, Amadeo Olivira sometime in 2015 and Michael Vasquez

5    between May 3, 2015 and August 26, 2017.  Vasquez Decl. ¶ 1; Chun Decl., Ex. A (Horn Depo.)

6    at 23.[4]  Horn's Complaint and interrogatory responses describe a series of incidents in which Horn

7    contends her managers engaged in disability harassment and failed to accommodate her between

8    2009 and 2017.  *Id.* at 3-57.  These involved Safeway store directors Brian Sullivan and Michael

9    Vasquez, as well as assistant store managers Michael Gravelle, Ben Beede, Jessica Taylor and

10   Jerry Hunt, and front-end managers Robin Hill, Kelli Snow and Alfonso Balboa.  Chun Decl., Ex.

11   E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 3-57.

12       On March 25, 2017, an incident occurred in which Horn called the police to report two

13   African-American customers, a mother and daughter, whom she suspected of shoplifting.  Chun

14   Decl., Ex. C (Horn Depo. Ex. 167) (arbitrator's decision).   A Safeway Asset Manager, Celia

15   Kettle, investigated the incident and concluded that Horn had violated multiple Safeway policies

16   including its Shoplifting Deterrence Policy.  Declaration of Celia Kettle in Support of Defendant

17   Safeway Inc.'s Motion for Partial Summary Judgment ("Kettle Decl.") ¶ 5. According to Kettle,

18   she had already counseled Horn in connection with a previous incident that occurred about a year

19   before in which Horn called the police to report suspected shoplifters, telling Horn that she was

20

21   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [4]While Safeway supplied a declaration from Vasquez that contains the specific dates of his tenure
22   as store director, it did not provide evidence as to the specific dates when Olivira and Sullivan
     were store director.  The only evidence in the record as to when these individuals were store
23   director is contained in Horn's deposition testimony, in which she responded to a question asking
     how long Sullivan was store director as follows: "Oh, at least from – from what I can recall two
24   thousand – the end of 2008 until '14.  Maybe right up to [Olivira] '15.  From '08 to '15."  *See*
     Chun Decl., Ex. A (Horn Depo.) at 23.   At oral argument, the Court asked Safeway if it could
25   provide the approximate dates when Sullivan and Olivira held the position of store director (or to
     point to any evidence on this question other than Horn's testimony) but counsel was unable to do
26   so.  Therefore, the Court must rely on the limited testimony in the record by Horn on this question.
     As there is no evidence in the record that the store had more than one director at a time (and
27   Horn's testimony indicates that these three individuals held this position sequentially), the
     undisputed evidence in the record reflects that Olivira held the store director position for
28   approximately four months, from the beginning of 2015 to May 2, 2015, when Vasquez took over
     the position.

"not authorized to assist in the detention of suspected shoplifters, including by contacting police." *Id.* ¶ 3.[5]

On April 17, 2017, Horn was suspended from her job on the basis that she had failed to follow Safeway's policies, and she was terminated on June 28, 2017. Declaration of Kevin Lovell in Support of Defendant Safeway Inc's Motion for Summary Judgment ("Lovell Decl.") ¶ 2. Horn's union filed a grievance on her behalf and she was reinstated to her position with a one-year suspension following binding arbitration. Chun Decl., Ex. C (Horn Depo. Ex. 167). The arbitrator found that Horn had "engaged in serious misconduct by indulging in racial profiling and falsely accusing customers of theft without having a reasonable basis for doing so." *Id.* at 31. Nonetheless, he found that Safeway's policy prohibiting Horn from calling the police under the circumstances of the incident had not been made sufficiently clear to Horn to justify termination as an appropriate sanction. *Id.* at 31-32. In his February 10, 2019 decision, the arbitrator ordered that Horn be reinstated immediately to her position at Safeway without loss of seniority and that she receive all lost wages except for those she would have earned during the one-year suspension. *Id.* at 32.

Horn filed a charge of disability discrimination with both the Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") on May 9, 2017. *See* Safeway's Request for Judicial Notice ("RJN"), Ex. A ("EEOC/DFEH Charge").[6] According to Horn, the EEOC issued a right-to-sue letter on September 25, 2018. Complaint ¶ 40. On March 11, 2019, Horn initiated this action in state court, asserting the following claims in her complaint: 1) retaliation based on disclosure of violations of the law under Cal. Labor Code section 1102.5 ("Claim One"); 2) retaliation in

---

[5] Horn does not concede that she violated Safeway policy and contends her suspension was retaliatory. That specific question, though, need not be resolved here as Safeway's summary judgment arguments are not based on the propriety (or lack of propriety) of the 2017 termination.
[6] Safeway requests that the Court take judicial notice of the EEOC/DFEH Charge under Rule 201 of the Federal Rules of Evidence. Horn does not oppose the request, which is GRANTED. *See Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 (N.D. Cal. 2013) (taking judicial notice of EEOC gender discrimination charge under Rule 201 of the Federal Rule of Evidence on the ground that it was a "public record[ ] whose accuracy is not in dispute").

violation of FEHA, Cal. Gov't Code section 12940 ("Claim Two"); 3) harassment in violation of FEHA, Cal. Gov't Code section 12940 ("Claim Three"); 4) aiding and abetting harassment under FEHA, Cal. Gov't Code section 12940 ("Claim Four"); 5) disability discrimination in violation of FEHA, Cal. Gov't Code section 12940 ("Claim Five"); 6) failure to prevent discrimination based on disability in violation of FEHA, Cal. Gov't Code section 12940 ("Claim Six"); 7) failure to reasonably accommodate disability in violation of FEHA, Cal. Gov't Code section 12940 ("Claim Seven"); 8) failure to engage in interactive process in violation of FEHA, Cal. Gov't Code section 12940 ("Claim Eight"); 9) disability discrimination in violation of the ADA, 42 U.S.C. § 12101 *et seq.* ("Claim Nine"); 10) failure to reasonably accommodate disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.* ("Claim Ten"); 11) harassment in violation of the ADA, 42 U.S.C. § 12101 *et seq.* ("Claim Eleven"); 12) retaliation in violation of the ADA, 42 U.S.C. § 12101 *et seq.* ("Claim Twelve"). In the complaint, Horn seeks, *inter alia*, compensatory and punitive damages and injunctive relief.

**B.    The Motion**

In the Motion, Safeway asks the Court to grant summary judgment in its favor on Claims Seven and Ten, for failure to reasonably accommodate under FEHA and the ADA, arguing that each of these claims is partially time-barred and that for the remaining period of time these claims fail based on the undisputed facts. Motion at 1. Likewise, Safeway contends it is entitled to summary judgment on Claim Eight, for failure to engage in the interactive process in violation of the FEHA, based on the undisputed facts. *Id.* In addition, Safeway contends Horn's remaining claims are partially time-barred. In particular, Safeway contends:

- Plaintiff's claims for disability discrimination (Claim Five), failure to prevent discrimination (Claim Six) and retaliation (Claim Two) in violation of the FEHA based on alleged incidents prior to May 9, 2016 are time-barred;

- Plaintiff's claims for disability discrimination (Claim Nine) and retaliation (Claim Twelve)[7] in violation of the ADA based on alleged incidents prior to July 13, 2016

---

[7] Safeway refers to Claim Twelve as a Title VII claim but the Complaint reflects that this claim is asserted under the ADA. Disability is "not a class protected by Title VII, and [Horn] does not

5

are time-barred;

- Plaintiff's claims for harassment (Claim Three) and aiding, abetting, inciting, compelling or coercing harassment (Claim Four) in violation of the FEHA based on alleged incidents prior to May 9, 2016 are time-barred;

- Plaintiff's claim for harassment in violation of the ADA (Claim Eleven) based on alleged incidents prior to July 13, 2016 is time-barred; and

- Plaintiff's claim for retaliation in violation of California Labor Code Section 1102.5 (Claim One) based on alleged incidents prior to March 11, 2016 is time-barred.

Motion at 1-2. Finally, Safeway asks the Court to grant summary judgment in its favor as to Horn's request for punitive damages.

In her Opposition, Horn concedes that the continuing violation doctrine does not apply to her disability discrimination, failure to accommodate, and retaliation claims under the ADA. Opposition at 3. She also concedes that she is not entitled to punitive damages. *Id.* at 4.

## III.    ANALYSIS

### A.    Legal Standard Under Fed. R. Civ. P. 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate " 'specific facts showing there is a genuine issue for trial.' " *Id.*

---

allege that she engaged in any protected activity under Title VII for purposes of a retaliation claim." *Bowling v. Diamond Resorts Int'l, Inc.*, No. CV 17-00562 DKW-RLP, 2018 WL 3244068, at *6 (D. Haw. July 3, 2018). The Court assumes that this was a clerical error on the part of Safeway's counsel. As the applicable standards for Title VII and ADA retaliation claims are the same, Safeway's argument would be the same regardless of which statute applies. At oral argument, Horn's counsel confirmed that she is not asserting any claims under Title VII.

(citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir. 2003). Neither conclusory, speculative testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**B.     Whether Horn's FEHA Claims are Partially Time-Barred**

### 1.   Legal Standards Governing Limitations Period Under FEHA and the Continuing Violation Doctrine

An employee who seeks to bring a FEHA action may not sue an employer directly but must first file a complaint with the DFEH. Cal. Gov't Code § 12960; *see also Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 820 (2001). "If the Department determines that it will not issue an 'accusation' after the filing of the complaint, or when 150 days have elapsed after the filing of the complaint, it 'shall issue' a 'right-to-sue' notice to the aggrieved employee." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th at 820 (quoting Cal. Gov't Code § 12965, subd. (b)). At the time Horn filed

her DFEH/EEOC Charge, on May 9, 2017, the time allowed to file a complaint with the DFEH was one year from the alleged unlawful conduct.  Cal. Gov't Code § 12960(d) (West 2019).[8] California courts have held, however, that the limitations period for filing a DFEH charge may be extended under the continuing violation doctrine with respect to certain types of FEHA claims.

In the context of claims for failure to reasonably accommodate an employee's disability, or for disability harassment, the California Supreme Court has held that application of the continuing violation doctrine is appropriate because of the legislature's intent that FEHA be construed liberally to safeguard employee's "right to hold employment without experiencing discrimination." *Richards*, 26 Cal. 4th at 821 (citation omitted).  In particular, the court has explained that the FEHA statute of limitations should not "be interpreted to give a disabled employee engaged in the process of seeking reasonable workplace accommodation or ending disability harassment two unappealing choices: on the one hand resigning and bringing legal action soon after the first signs that her rights have been violated, or on the other hand attempting to persist in the informal accommodation process and risk forfeiture of the right to bring such an action altogether." *Id.* at 820-821.  Moreover, the court in *Richards* explained, "t]here is particularly good reason to view the failure over time to reasonably accommodate a disabled employee as a single course of conduct[,]" namely, because doing so is consistent with the informal interactive process for achieving workplace accommodation that is envisioned under FEHA and the ADA.

The court in *Richards* adopted the following test for applying the continuing violation doctrine to FEHA claims:

> [A]n employer's persistent failure to reasonably accommodate a disability, or to eliminate a hostile work environment targeting a disabled employee, is a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind—recognizing . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms . . . ; (2) have occurred with

---

[8] Effective January 1, 2020, the time to file a charge with the DFEH for an alleged FEHA violation was extended to three years.  Horn does not, however, contend that this change extended the time to file a charge with respect to claims that had expired under the one-year limitations period that was in effect when she filed her charge with the DFEH.

8

reasonable frequency; (3) and have not acquired a degree of permanence.

*Id.* at 823. In *Yanowitz v. L'Oreal USA, Inc.*, the California Supreme Court made clear that the continuing violation doctrine applies to FEHA disability discrimination claims and also held that it applies to claims for retaliation asserted under FEHA. 36 Cal. 4th 1028, 1058 (2005).

### 2. Claim Seven (Failure to Reasonably Accommodate under FEHA)

#### a. Contentions of the Parties

Because Horn filed her DFEH/EEOC Charge on May 9, 2017, her FEHA claim for failure to accommodate is limited to conduct that occurred on May 9, 2016 or later *unless* earlier conduct can be considered under the continuing violation doctrine. Safeway contends Horn's claim is time-barred as to conduct that occurred before Michael Vasquez became store manager, on May 3, 2015, implicitly conceding that conduct that occurred between May 3, 2015 and May 9, 2016 is actionable under the continuing violation doctrine. Safeway argues that the continuing violation doctrine does not reach conduct *before* Vasquez became store manager, however, because Horn allegedly admitted in her deposition "that during the one to two year time prior to Vasquez becoming the Store Director, her restrictions were properly accommodated." Motion at 8 (citing Chun Decl., Ex. C (Horn Depo.) at 425:22-426:20, 427:22-428:24).

According to Safeway, "Given this one to two year gap in time, Plaintiff cannot establish that the alleged failure to accommodate that occurred prior to Vasquez becoming the Store Director are part of a continuing violation, and therefore, properly part of this lawsuit." *Id.* In particular, Safeway argues that Horn has not satisfied the "frequency" requirement of the continuing violation test. *Id.* at 9 (citing *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal.App.4th 1336, 1354 (2011); *Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856, 863 (C.D. Cal. 2017); *Adetuyi v. City & Cty. of San Francisco*, 2011 WL 1878853, *7 (Cal. Ct. App. May 17, 2011); *Rabara v. Heartland Employment Servs., LLC*, 2019 WL 1877351, *13 (N.D. Cal. Apr. 26, 2019)).

The deposition testimony Safeway relies upon to show that Horn admits that reasonable accommodations were provided in the one to two years before Vasquez became store manager is

as follows:

       Q:  Do you know someone named Amadeo Olivira?

       A:  Amadero, yes.

       Q:  And who is that?

       A:  Store manager.

       Q: From when to when?

       A.  I don't know.

       Q: Do you know when he stopped being a store manager?

        A:  He stopped and then Brian -- or Michael came to our store.

       Q: Michael who?

       A: Michael Vasquez.

       Q:  Michael Vasquez. And so whenever he started -- whenever he was there -- would it be accurate that you very seldom had any issues with regard to your accommodation while Amadeo was the store manager?

       A: Yes, he was great.

       Q:  He was great.  So he was the store manager throughout 2015, wasn't he?

       A:  I don't know what time again, the time period. It was, like, maybe less than two years, I would assume.

       . . .

       Q. He was great, as you just said, wasn't he?

       A:  Yes.

       Q:  And you didn't have any issues with your accommodations while he was there, did you?

       A: Not that I recall.

       Q: Okay.  And he was there for a full two years. Right?

       A:  I don't remember, as I said.

       Q: Did you not just say he was there about two years?

       MR. KIM: Misstates testimony.

1      Q: (BY MR. LAFAYETTE):· I'm just asking. Ma'am, didn't you just say that under

2 penalty of perjury?

3      A: I don't know how long he was there. I don't know.

4      Q: Did it seem to you like it was about two years?

5      A: I don't know. I can't recall.

6      Q: So why did you say that a couple minutes ago?

7      A: I'm -- I don't know how long. A year or two. Yeah, I don't know the time period, what

8 part of the year. I don't -- I don't recall.

9      Q: Okay. And whatever the time period was when he was there, as you said, it was great.

10 Right?

11      MR. KIM: Asked and answered.

12      THE WITNESS: Yes.

13 Chun Decl., Ex. C (Horn Dep.) at 425:22-426:20, 427:22-428:24.

14      b. Discussion

15      Safeway contends any alleged ongoing failure to accommodate cannot, as a matter of law,

16 be based on conduct that occurred before Vasquez became store director because of what it

17 contends is an admission that it reasonably accommodated Horn in the "one to two years" before

18 Vasquez became director. The Court disagrees.

19      First, Safeway has not pointed to any evidence (undisputed or otherwise) establishing the

20 length of time Olivira was store director, even though it presumably is in possession of this

21 information. Moreover, despite counsel's aggressive efforts to elicit testimony from Horn during

22 her deposition that Olivira was store manager "about two years" or "throughout 2015[,]" she

23 offered no such testimony. When pressed, she stated that Olivira may have been store director "a

24 year or two" but she went on to state that she did not "know the time period, what part of the

25 year[,]" suggesting Olivira may have been store director for *less* than a year. *See* Chun Decl., Ex.

26 C (Horn Depo.) at 25-28. At another point in her deposition, Horn testified that Sullivan was store

27 director until 2015, when Olivira replaced him. Chun Decl., Ex. A (Horn Depo.) at 23. Given that

28 it is undisputed that Vasquez became store director on May 3, 2015, and construing Horn's

testimony (which is uncontroverted by Safeway) in a manner that draws all reasonable inferences in her favor, the undisputed facts establish that Olivira was store director only from the beginning of 2015 until May 3, 2015, when Vasquez became store director. Thus, even assuming Horn's deposition testimony constitutes an admission that she was provided reasonable accommodation during the period Olivira was store director, it does not establish that the frequency requirement of the continuing violation doctrine is not met as to conduct that occurred before Olivira was store director as Olivira's tenure was much shorter than Safeway contends.

Second, Safeway overstates Horn's testimony and ignores other evidence of ongoing failure to accommodate involving very similar complaints over a period of years prior to Vasquez becoming store manager. Horn's interrogatory responses describe a history going back at least to July 2010 of managers and assistant managers failing to ensure that she had access to a stool, asking her to work longer than two hours at a time as a checker without a break and retaliating against her for complaining that she was not being provided with reasonable accommodations.

Horn states in her interrogatory responses, "From the time period of July 2010 the stool that Safeway knew I needed to accommodate my disability while checking would be unavailable to me." *See* Chun Decl., Ex. E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 20. She elaborates that "[s]ometimes it would just be gone. Sometimes another employee would take it and not want to give it back and the managers would not provide one for me. Sometimes it would be placed in a locked room where I could not get to it." *Id.* According to Horn, she "would tell Safeway verbally about the need for a stool and the lack of a stool quite often with little result." *Id.*; *see also* Horn Decl. ¶ 6 ("Beginning in 2014, I verbally complained every day that my accommodations were not being met."). Indeed, the record contains copies of ten handwritten notes, spanning the period January 2, 2014 through November 9, 2016, that Horn left for her managers. Horn Decl., Exs. A-J. The content of these notes (which were addressed generally to "management" and not to any particular store manager or store director) indicates that the missing stool was not a series of relatively isolated incidents but a constant problem. In her June 8, 2015 note, for example, Horn stated that she had not been able to locate her stool, continuing, "It is quite a problem to find and use. Most of the time I don't find it." *Id.* Ex. F.

12

Likewise, Horn offers evidence that she was required to work "beyond [her] time restrictions at the check stand" approximately 50 times between January 2, 2014 and April 26, 2017. Horn Decl. ¶ 17.[9] She states in her interrogatory responses, "During the period of January 2, 2014 to February 8, 2014 I worked 22 days and on 18 of those days, Safeway required me to work check out for more than 2 hours in a 4 hour period, without a stool. Safeway did this through Michael Vasquez, Michael Gravelle, Brian Sullivan, Armando last name unknown (person in charge), Ben Beede, Front End Manager Robin Hill, Kelli Snow, and Alfonso Balboa (person in charge)." Chun Decl., Ex. E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 21. Horn states further, "During the period of July 2, 2014 to July 7, 2014, I worked 6 days. On 4 of those 6 days, I was required to work the check[-]out stand for more than 2 hours in a 4 hour period." *Id.* at 21. This problem continued when Vasquez became store manager, according to Horn. *See id.* at 23 ("During September of 2016, Store Manager Michael Vasquez would constantly ask me to check more than 2 hours out of 4 in spite of me pointing out to him that this went against my accommodations for my disability."); *id.* at 24-26 (describing numerous specific incidents in 2016 when Horn was required to work as a checker for more than two hours without a break).

Drawing all reasonable inferences in Horn's favor, the evidence discussed above is sufficient to meet the requirements of the continuing violation test, including the "reasonable frequency" requirement that is the focus of Safeway's Motion. Safeway's narrow focus on Vasquez runs counter to the California Supreme Court's admonition in *Richards* that courts must recognize that "similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms." 26 Cal. 4th at 823. Horn's complaints that she was being asked to work more than two hours at a time as a checker and was not provided with a stool were not aimed only at the store directors but also at a number

---

[9] Horn also provides a chart listing her total daily hours as a checker during this period. Horn Decl., Ex. K. Safeway object to this exhibit on the basis that it is not properly authenticated and argues further that because it contains only the total number of hours she worked as a checker each day it does not show that Horn worked more than two hours *at a time*. Reply at 14. The Court declines to rule on this objection because it finds that even apart from the chart, there is sufficient evidence to demonstrate a material issue of fact that precludes summary judgment on this issue.

of lower-level managers and were remarkably consistent over time. Horn's testimony that store director Olivira was "great" does not establish as a matter of law that these ongoing alleged violations ended for the purposes of FEHA's limitation period given the short time he held that position and the fact that Horn's complaints were not aimed solely at the specific individuals who held the position of store director.

Nor do the cases cited by Safeway stand for a contrary result as they are factually distinguishable. In *Brennan v. Townsend & O'Leary Enterprises, Inc*., 199 Cal. App. 4th 1336, 1355 (2011), the court addressed whether judgment notwithstanding verdict in favor of the defendant on a sexual harassment claim was warranted. The main question in that case was whether the evidence at trial was sufficient to establish "a concerted pattern of harassment of a repeated, routine, or a generalized nature." 199 Cal. App. 4th at 1354 (citation omitted). In a footnote, the court noted that some of the incidents of alleged harassment were likely time-barred, observing that "On this record, we cannot see how the incidents of wrongful conduct relied upon by plaintiff in this action can be considered as continuing with reasonable frequency when the incidents are spaced apart no less than six months and sometimes more than a year." *Id.* at 1354 n. 4. This statement is dicta, however, because the court assumed without deciding that none of the conduct at issue was time-barred. *Id.* More importantly, the case is distinguishable on the facts as the plaintiff in *Brennan* relied only on a handful of specific incidents of gender-based conduct that occurred over a period of years whereas Horn has offered evidence that supports a plausible inference that she continuously and regularly experienced problems obtaining reasonable accommodation, both before and after Vasquez became store manager, especially with respect to the availability of a stool to sit on. *Adetuyi v. City & Cty. of San Francisco*, 2011 WL 1878853 (Cal. Ct. App. May 17, 2011), and *Rabara v. Heartland Employment Servs., LLC*, 2019 WL 1877351 (N.D. Cal. Apr. 26, 2019) are factually distinguishable for the same reason, namely, that those cases involved gaps in actionable conduct of six months or more.

Safeway's reliance on *Kaldis v. Wells Fargo Bank, N*.A., 263 F. Supp. 3d 856, 863 (C.D. Cal. 2017) is also misplaced. In *Kaldis*, the plaintiff sought to assert claims for harassment based on gender and disability based on harassing conduct that occurred more than a year before she

filed her DFEH charge. 263 F. Supp. 3d at 863. It was undisputed that the only allegedly harassing conduct that fell within the one-year period, however, was her termination; the allegedly harassing comments occurred more than a year before that. *Id.* The court found that the harassment claim was time-barred not only because of the time that elapsed between the comments and the termination but also because the comments were not sufficiently similar to the timely conduct, namely, her termination, to satisfy the continuing violation test. *Id.* In particular, the court concluded that the "verbally harassing comments concerning gender are entirely distinct in kind from a purportedly wrongful termination based on taking disability leave" and that "while verbally harassing comments concerning her disability have a marginally closer connection to the reason for her allegedly wrongful termination, it is still insufficiently similar for purposes of the continuing violations doctrine." *Id.* In contrast, the timely conduct upon which Horn bases her claim for failure to accommodate is very similar to the conduct that is the basis for her claim prior to the arrival of Vasquez as store director, as discussed above. Therefore, the court's conclusions in *Kaldis* do not apply here.

The Court therefore concludes that Safeway is not entitled to summary judgment that Horn's FEHA claim for failure to provide reasonable accommodation is partially time-barred.

### 3. Claim Eight (Failure to Engage in Interactive Process under FEHA)

Safeway contends Horn's FEHA claim for failure to engage in the interactive process is partially time barred for the same reason her FEHA claim for failure to provide reasonable accommodation is partially time-barred, namely, that she admits that in the "year or two" before Vasquez became store director, "her restrictions were properly accommodated." Motion at 12. The Court rejects this argument for the same reasons it rejects Safeway's argument as to the FEHA claim for failure to provide reasonable accommodation. Therefore, it concludes that Safeway is not entitled to summary judgment that this claim is partially time-barred.

### 4. Claim Three (Harassment Under FEHA) and Claim Four (Failure to Prevent Harassment Under FEHA)

a. Contentions of the Parties

Safeway argues that Horn's claims for harassment and failure to prevent harassment under

15

FEHA are barred to the extent they are based on conduct that occurred before May 9, 2016 (one year before she filed her DFEH/EEOC Charge) because there is a break of approximately two years between the incidents of harassment Horn alleges occurred when Brian Sullivan was store director and the alleged harassment by Vasquez, Assistant Managers Jerry Hunt and Jessica Taylor, bookkeeper Kelli Snow and cashier Maniya Darden that occurred beginning in 2016. Motion at 16 (citing Chun Decl., Ex. E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 45-48); Chun Decl., Ex. A (Horn Depo.) at 23). According to Safeway, given this break, Horn cannot establish that conduct that occurred before May 9, 2016 was part of a continuing violation as to these claims. *Id.* (citing *Brennan*, 199 Cal.App.4th at 1354; *Kaldis*, 263 F. Supp. 3d at 863 (C.D. Cal. 2017); *Adetuyi v. City & Cty. of San Francisco*, 2011 WL 1878853, *7; *Rabara v. Heartland Employment Servs., LLC*, 2019 WL 1877351, *13).

Horn responds that the continuing violation doctrine applies to these claims because they are "predicated on her accommodations not being met" and between 2012 and 2016 she repeatedly could not find her stool and was asked to work as a checker more than two hours at a time. Opposition at 12. She also asserts that the continuing violation doctrine applies because between 2011 and 2017 "her coworkers harassed her in front of Mr. Sullivan and Mr. Vasquez." *Id.*

        b.  Discussion

Under FEHA, it is an unlawful employment practice for an employer to harass an employee on the basis of disability, and employers must take "all reasonable steps" to prevent such harassment from occurring. Cal. Gov't Code section 12940(j)(1). The law prohibiting harassment is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nazir v. United Airlines, Inc*., 178 Cal. App. 4th 243, 263–64 (2009) (internal quotations and citations omitted). "In determining what constitutes 'sufficiently pervasive' harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 142 (2007) (citations omitted).

16

As a preliminary matter, the Court rejects Horn's argument in her Opposition that the ongoing alleged failure to accommodate her physical disability was, by itself a form of harassment sufficient to establish an ongoing violation. Horn has cited no authority for the proposition that incidents involving failure to provide reasonable accommodation are sufficient, as a matter of law, to establish an ongoing violation with respect to a harassment claim. Further, while it is no doubt possible to allege conduct that establishes both a failure to accommodate *and* harassment, in this case Horn's general allegations with respect to the failure to accommodate, such as her ongoing difficulties locating the stool that was supposed to be available to her, do not necessary reflect any discriminatory animus that would show that these difficulties rose to the level of harassment. Although she does point to a specific instance when a manager intentionally deprived her of use of a stool, in August of 2012, the next time similar conduct allegedly occurred was in October 2016, that is, more than four years later, and involved different managers. *Id.* at 45-46. This period of time during which no similar incidents are alleged to have occurred is too long to warrant application of the continuing violation doctrine to Horn's harassment claim based on allegations that she was denied reasonable accommodation.

The Court further finds that the types of harassment that Horn described in her interrogatory responses that occurred within the statutory period (that is, after May 9, 2016) are not particularly similar to the incidents she alleges occurred during Sullivan's tenure as store director. In her interrogatory responses, Horn described specific incidents when she was allegedly harassed that occurred in October 2009, when Brian Sullivan allegedly threw a restriction sheet in Horn's face, and August 2012, when Assistant Manager Beede allegedly kept her from using her stool while checking. *Id.* at 45. The next specific incidents she describes largely involve conduct by Vasquez "[i]n Fall 2016 and Spring 2017." *Id.* at 45. Horn alleges Vasquez "would stand over [her] . . . looking for something to nit-pick[,]" "ridicule [her] in front of customers" for not knowing a produce code, and on one occasion told Horn he might not have work for her and could not accommodate her restrictions because he had "other employees who need[ed] to be placed in [her] position." *Id.* at 45-46.

The only suggestion in Horn's interrogatory responses that there was ongoing harassment

of a similar sort under Sullivan and Vasquez is her statement that she was harassed "over a dozen times between 2011 and April 27, 2017" by coworkers in connection with her need for accommodation "in front of [her] supervisors, including Brian Sullivan and Michael Vasquez." *Id*. In particular, she stated that coworkers allegedly "yell[ed] and scream[ed]" at her for seeking to use a stool or requesting that her time as a checker be limited to two hours at a time. *Id.* She continued, "In each of these cases, Brian Sullivan would silently watch and allow the harassment to happen." *Id.* Because Horn did *not* specifically allege that Vasquez stood by and allowed coworkers to harass her, the Court asked for clarification at oral argument. Horn stipulated that her allegations with respect to this sort of harassment were based on incidents involving Sullivan and that she could not point to any such incidents involving Vasquez. Based on that clarification, the Court concludes that Horn has not offered evidence sufficient to establish a genuine dispute of fact that alleged conduct showing harassment that occurred outside the statutory period was part of a continuing violation.

Therefore, the Court finds that Safeway is entitled to summary judgment that these claims are partially time-barred.

### 5. Claim Five (Discrimination under FEHA), Claim Six (Failure to Prevent Discrimination under FEHA and Claim Two (Retaliation Under FEHA)

a. Contentions of the Parties

Safeway contends Horn's FEHA claims for discrimination, failure to prevent discrimination and retaliation are time-barred as to any conduct that occurred more than a year before she filed her DFEH/EEOC Charge, that is, before May 9, 2016. Motion at 14-15. In support of its position, it observes that an adverse employment action is a required element of each of these claims and that in her interrogatory responses, Horn's list of adverse employment actions contains a four-year gap between an incident on October 14, 2012, when assistant manager Ben Beede gave Horn a written warning and November 14, 2016, when Horn alleges she was written up for providing poor customer service. Motion at 14 (citing Chun Decl., Ex. E (Plaintiff's Responses to Defendant's Interrogatories, Set One) at 66-67).[10]

_____

[10] In Interrogatory Eleven of Set One, Safeway asked Horn to "[i]dentify each discriminatory

Horn responds that "denial of a requested accommodation without an offer of a reasonable alternative . . . is an adverse employment action."  Opposition at 12 (citing *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1093 (E.D. Cal. 2017).  Safeway counters, however, that Horn's argument should be rejected because it is an improper effort to amend her interrogatory responses.  Reply at 8.  In any event, it argues, *Ravel* is inapposite because in that case the defendant employer "made a decision to deny the plaintiff-employee's accommodation request to work from home, and the issue was whether the alternative accommodation request offered by the defendant-employer was reasonable."  *Id.*  In contrast, Safeway asserts, Horn does not allege that Safeway denied her request for accommodation and instead concedes that Safeway *agreed* to an accommodation in 2012.  *Id.*  To the extent that Horn asserts that each instance in which Safeway failed to abide by the 2012 agreement was an adverse employment action, that argument should be rejected, Safeway contends, because Horn "cites no authority standing for the proposition that each of these alleged instances constituted adverse employment actions."  *Id.*

> b. Discussion

"[I]n order to establish either a discrimination or a retaliation claim, 'an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment [.]' " *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1168 (2008) (quoting *Yanowitz*, 36 Cal.4th at 1051). "[A]n adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career enhancement." *Jones v. Department of Corrections and Rehabilitation*, 152 Cal.App.4th 1367, 1380 (2007) (citing *Yanowitz*, 36 Cal.4th at 1053–54).

In *Ravel*, the plaintiff brought claims for disability discrimination under the ADA and FEHA based on her employer's refusal to allow her to work from home to accommodate an

---

adverse employment action you contend you were subjected to by the Defendant and separately identify for each such action, the date of the action, the person who took the action and the reasons you believe the action was discriminatory."

United States District Court
Northern District of California

alleged disability, instead requiring her to take a medical leave that entailed a 30% salary cut. 228 F. Supp. 3d at 1090-1091. Her employer brought a motion to dismiss asserting, *inter alia*, that the plaintiff had not alleged an adverse employment action and therefore, that she failed to state a claim for disability discrimination under FEHA. *Id.* at 1091. The court rejected the employer's argument, finding that under FEHA, requiring an employee to take medical leave where other reasonable accommodations would have allowed the employee to remain on the job is an adverse employment action "when it leads to loss of income." *Id.* at 1097 (citing *Wallace v. Cty. of Stanislaus*, 245 Cal. App. 4th 109, 134-137 (2016)).

Horn relies on *Ravel* to oppose Safeway's Motion as to her FEHA claims for discrimination, failure to prevent discrimination and retaliation, but she fails to meaningfully address in her opposition brief how the holding of *Ravel* applies here. There is no evidence in the record that Safeway ever placed Horn on disability leave rather than offering a reasonable accommodation. Moreover, to the extent Horn seeks to rely on various incidents between 2012 and 2016 of which there is evidence in the record in which Horn was asked to work more than two hours as a checker or denied use of a stool, that effort fails as she has neither identified any particular incident that might constitute an adverse employment action or explained how any particular incident rises to the level of an adverse employment action under FEHA. Nor has she addressed why these unidentified "adverse employment actions" fall under the continuing violation doctrine. Neither Safeway nor the Court is required to speculate as to the factual basis for Horn's theory as to these claims. Accordingly, the Court finds that these claims are time-barred as to conduct that occurred before May 9, 2016.

## C. Whether Horn's Claim Under Cal. Labor Code section 1102.5 (Claim One) is Partially Time-Barred

Horn asserts a claim for retaliation under California Labor Code section 1102.5, which is "California's general whistleblower statute." *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468 (2013) (internal quotation and citation omitted). To make a prima facie case of retaliation under this provision, a plaintiff "must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link

20

between the two." *Id.* (internal quotations and citation omitted). Because a claim under section 1102.5 seeks to establish "liability created by statute" it is governed by the three-year statute of limitations set forth in Cal. Civ. Code section 338(a). However, claims for retaliation under section 1102.5, like FEHA retaliation claims, may be asserted based on conduct that is outside of the statutory period under the continuing violation doctrine. *See Eng v. Cty. of Los Angeles*, No. CV0502686MMMSSX, 2006 WL 8442227, at *17 (C.D. Cal. June 14, 2006) (holding that at the pleading stage of the case, a claim asserted under section 1102.5 was not time-barred, even though it was based in part on conduct that occurred outside the limitation period, because a continuing violation was sufficiently alleged).

Because Horn filed her complaint on March 11, 2019, Safeway contends this claim is barred as to conduct that occurred more than three years before that, that is, before March 11, 2016. Motion at 18. Safeway further asserts that in light of the four year gap in the adverse employment actions listed in Horn's interrogatory responses, discussed above, the frequency requirement of the continuing violation doctrine is not satisfied as to the alleged incidents that occurred in 2012 and before. The Court agrees. For the reasons discussed above, the Court concludes that the continuing violation doctrine does not apply to this claim. Accordingly, Safeway is entitled to summary judgment on this claim to the extent it is based on conduct that occurred before March 11, 2016.

**D.** **Whether Horn's ADA Claims are Partially Time-Barred**

**1.** **Legal Standards Governing Limitation Period for ADA Claims**

"Before filing an ADA suit, a plaintiff must timely file a discrimination charge with the EEOC." *Douglas v. California Dep't of Youth Auth*., 271 F.3d 812, 823 (9th Cir.), amended, 271 F.3d 910 (9th Cir. 2001) (citing 42 U.S.C. § 12117(a)). A charge is timely if it is filed with the EEOC within 180 days after the alleged violation or, if the charge is filed with an appropriate state agency, within 300 days after the alleged violation. *Id.* (citing 42 U.S.C. § 2000e–5(e)). Under the ADA, claims that are based on "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 113 (2002). On the other hand, hostile work environment claims, by their [v]ery nature involve[ ] repeated conduct" and therefore, conduct outside the statutory period may be actionable under the continuing violation doctrine. *Id.* at 115-118.

### 2. Claim Nine (Discrimination under the ADA) and Claim Twelve (Retaliation Under the ADA)

Horn concedes that the continuing violation doctrine does not apply to her ADA claims for discrimination and retaliation. Opposition at 3. Accordingly, Safeway is entitled to summary judgment limiting those claims to conduct that occurred within 300 days of filing her DFEH/EEOC Charge, that is, on or after July 13, 2016.

### 3. Claim Eleven (Harassment Under the ADA)

Safeway contends its ADA harassment claim is time-barred as to conduct that occurred before July 13, 2016 because the continuing violation doctrine does not apply. For the same reasons the Court finds that the continuing violation doctrine does not apply to Horn's harassment claim under FEHA it also concludes that it does not apply to her ADA harassment claim. Therefore, the Court finds that Safeway is entitled to summary judgment on this issue.

### 4. Claim Ten (Failure to Reasonably Accommodate)

Horn concedes that the continuing violation doctrine does not apply to her ADA claim for failure to reasonably accommodate. Opposition at 3. Accordingly, Safeway is entitled to summary judgment limiting that claim to conduct that occurred within 300 days of filing her DFEH/EEOC Charge, that is, on or after July 13, 2016.

### E. Whether Safeway is Entitled to Summary Judgment on Horn's Failure to Accommodate Claims under FEHA and the ADA (Claims Seven and Ten)

Safeway argues to the extent Horn's claims for failure to accommodate is not time-barred it is meritless because Horn "cannot establish that Safeway failed to accommodate her work restrictions." Motion at 10. In support of this position, Safeway points to the Modified Work Offer, which provided that a stool would be available as needed and that it would be "best" if she checked no more than two hours at a time, total 4 hours per day. *Id.* at 11. To the extent Horn contends these accommodations were not actually provided, Safeway points to the "flexible" language in the offer to argue that it was not actually required to limit her time as a checker to two

hours at a time or four hours total. *Id.*

As to the evidence that a stool was not always available, Safeway points to deposition testimony in which Horn allegedly "admits that (1) she was in fact provided with a stool, (2) no one ever told her that she could not use a stool, (3) she is not aware of any manager moving the stool from the office where it was supposed to be stored while not in use, (4) she never heard any manager say they would take stool out of office, (5) she never heard anyone tell anyone to move the stool, and (6) she is not aware of any witness who would be able to state that the stool was ever missing." *Id.* at 12 (citing Chun Decl., Ex. C (Horn Depo.) at 329:13-21, 333:23-335:19, 340:19-24, 346:24-347:2). Safeway's argument has no merit.

Safeway relies on somewhat ambiguous language in the Modified Work Offer to argue that as a matter of law, it was not required to limit Horn's time as a checker to two hours at a time or four hours total and further suggests that because Horn accepted the offer, Horn agreed that a promise that Safeway would do its best (but not guarantee) to ensure that her time as a checker would be limited this arrangement was a reasonable accommodation under the ADA and FEHA. Safeway cites no authority for its position, which flies in the face of the standards that apply on summary judgment. Drawing all reasonable inferences in Horn's favor, a jury could conclude that Horn understood the Modified Work Offer to contain an actual commitment to limit her time as a checker and that her acceptance was in no way an admission that merely doing its "best" to limit her time as a checker to two hours would be a reasonable accommodation. A jury could also conclude that to the extent the Modified Work Offer contained no meaningful commitment to limit Horn's time as a checker, it did not offer Horn a reasonable accommodation.

Likewise, the deposition testimony Safeway cites in support of the alleged admissions by Horn with respect to the availability of a stool does not establish that there are no material disputed facts on this question. Safeway points to various admissions by Horn that she never saw anyone move the stool, but she also testified that this was because the stool was moved before she arrived at work. *See* Chun Decl., Ex. C. (Horn Depo.) at 329, 334-335, 340. She further testified that given the stool was supposed to be kept in a locked office, she concluded that "everybody [took the stool] because it wasn't in there." *Id.* Moreover, the record contains a series of notes

Horn left for her managers about the missing stool. From this evidence, a jury could reasonably conclude that Horn's managers knew that the stool Horn was supposed to have access to was frequently unavailable and yet did nothing. It could on that basis conclude that despite the Modified Work Offer promising that a stool would be available on an as-needed basis, that Safeway did not provide Horn with a reasonable accommodation – regardless of who actually removed the stool from the office.

The Court therefore denies Safeway's request for summary judgment on Horn's claims for failure to provide a reasonable accommodation.

### F. Whether Safeway is Entitled to Summary Judgment on Horn's Claim for Failure to Engage in the Interactive Process Under FEHA (Claim Eight)

Safeway argues it is entitled to summary judgment on its claim for failure to engage in the interactive process because it is undisputed that a Modified Work Offer was made to Horn in 2012, that she accepted that offer, and that the Modified Work Offer was never rescinded. Motion at 13. However, given that Safeway has taken the position that the Modified Work Offer did not require it to limit Horn's time as a checker, despite evidence (construed in the light most favorable to Horn) that Horn's doctors recommended such limitations, material disputes of fact remain as to whether Safeway satisfied its obligation to engage in the interactive process to determine a reasonable accommodation. Therefore, the Court denies summary judgment on this claim.

### G. Whether Horn is Entitled to Punitive Damages

Horn does not dispute that she is not entitled to punitive damages. Accordingly, the Court GRANTS summary judgment in favor of Safeway on that question and dismisses Horn's claim for punitive damages.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part as follows:

1) Claim One (retaliation under Cal. Labor Code section 1102.5): GRANTED. This claim is time-barred as to conduct that occurred before March 11, 2016.

2) Claim Two (retaliation in violation of FEHA): GRANTED. This claim is time-barred as to conduct that occurred before May 9, 2016.

24

3) Claim Three (harassment in violation of FEHA):  GRANTED.  This claim is time-barred as to conduct that occurred before May 9, 2016.

4) Claim Four (aiding and abetting harassment in violation of FEHA):  GRANTED.  This claim is time-barred as to conduct that occurred before May 9, 2016.

5) Claim Five (disability discrimination in violation of FEHA):  GRANTED. This claim is time-barred as to conduct that occurred before May 9, 2016.

6) Claim Six (failure to prevent discrimination based on disability in violation of FEHA):  GRANTED.   This claim is time-barred as to conduct that occurred before May 9, 2016.

7) Claim Seven (failure to reasonably accommodate disability in violation of FEHA:  DENIED.

8) Claim Eight (failure to engage in interactive process in violation of FEHA):  DENIED.

9) Claim Nine (disability discrimination in violation of the ADA):  GRANTED.  This claim is time-barred as to conduct that occurred before July 13, 2016.

10) Claim Ten (failure to reasonably accommodate disability in violation of the ADA):  GRANTED to the extent this claim is time-barred as to conduct that occurred before July 13, 2016.  Otherwise DENIED.

11) Claim Eleven (harassment in violation of the ADA):  GRANTED.  This claim is time-barred as to conduct that occurred before July 13, 2016.

12) Claim Twelve (retaliation in violation of the ADA):   GRANTED.  This claim is time-barred as to conduct that occurred before July 13, 2016.

Finally, the Court GRANTS summary judgment in favor of Safeway with respect to Horn's request for punitive damages, which is dismissed.

**IT IS SO ORDERED.**

Dated:  May 6, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge